UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

AKIRA SIMS,                                    )
                                               )
        Plaintiff,                             )
                                               )
        vs.                                    )
                                               )    No: 2:23-1154
MARQUETTE UNIVERSITY,                          )
JAKE SIERAKOWSKI, SERENA                        )    **PLAINTIFF DEMANDS**
BEKTESHI, DEVIN MISTRY,                          )    **TRIAL BY JURY**
AND CHARLIE MADIGAN,                            )
                                               )
        Defendants.                            )

## COMPLAINT AT LAW

NOW COMES the Plaintiff, AKIRA SIMS, by and through her attorneys, KREAMER LAW GROUP, LLC., and for her Complaint at Law against the Defendants, MARQUETTE UNIVERSITY, JAKE SIERAKOWSKI, SERENA BEKTESHI, DEVIN MISTRY, and CHARLIE MADIGAN, states as follows:

## PARTIES

1. Plaintiff, Akira Sims, is an individual citizen of Illinois, residing in Chicago Heights, Illinois. During all times relevant was a student at Marquette University and resided in room 1206 of the Eckstein Towe Residence Hall.

2. Defendant, Marquette University, is and was at all times relevant a university, which receives federal funds, in Milwaukee, WI.

3. Defendant, Jake Sierakowski, is and was at all relevant times a student at Marquette University, in Milwaukee, WI. And upon information and belief resided in room 1204 of the Eckstein Tower Residence Hall.

4. Defendant, Serena Bekteshi, is and was at all relevant times a student at Marquette University, in Milwaukee, WI. And upon information and belief resided in room 1211 of the Eckstein Tower Residence Hall.

5. Defendant, Devin Mistry, is and was at all relevant times a student at Marquette University, in Milwaukee, WI. And upon information and belief resided in room 1214 of the Eckstein Tower Residence Hall.

6. Defendant, Charlie Madigan, is and was at all relevant times a student at Marquette University, in Milwaukee, WI. And upon information and belief resided in room 1226 of the Eckstein Tower Residence Hall.

## JURISDICTION AND VENUE

7. This Court has jurisdiction over federal questions pursuant to 28 U.S.C. §1331 and redressing violations of civil rights pursuant to 28 U.S.C. §1343, as well as supplemental jurisdiction over Wisconsin state law claims pursuant to 28 U.S.C. §1367.

8. This Court has proper venue under 28 U.S.C. 1391.

## RELEVANT FACTS

9. Plaintiff was a student at Defendant Marquette University during the Fall of 2021.

10. Defendants Mistry, Sierakowski, Bekteshi, and Madigan were all students at Defendant Marquette University during the Fall of 2021.

11. Plaintiff and Defendants Mistry, Sierakowski, Bekteshi, and Madigan all resided in the same residence hall during the Fall of 2021.

12. On or about September 6, 2021, at approximately 10:38 p.m., Plaintiff called to make a noise complaint due to other residents in her dormitory residence playing music very loud, during quiet hours.

13. On or about September 13, 2021, at approximately 10:20 p.m., Plaintiff called to make a noise complaint due to other residents in her dormitory residence playing music very loud, during quiet hours.

14. In approximately mid-September of 2021, Plaintiff was in the restroom of her dormitory residence, in the main sink area cleaning herself, with her pants down. At which time, she thought she heard someone enter the restroom. Due to having headphones on, however, she was unable to be sure. When Plaintiff heard the noise again, she looked up from what she was doing, but the person was gone before she could look at their face. Unbeknownst to the Plaintiff, the main doors to the restroom did not lock and it was likely she had been seen while getting cleaned up.

15. Approximately one week later, Plaintiff started to hear comments, while walking around her dormitory residence, such as, "that's the girl."

16. On or about October 14, 2021, approximately between 1:10 p.m. and 1:30 p.m., Plaintiff heard an individual loudly shouting monkey noises. Plaintiff is a black woman, and this was highly offensive. Plaintiff recognized another student and resident of the dormitory frequently seen with the individual making the monkey noises.

17. On October 14, 2021, at approximately 5:05 p.m., Plaintiff emailed Residential Assistant Jalen Fox (hereinafter "RA Fox"), to inquire about who might be able to help her with the bullying, racial harassment, and discrimination she was experiencing.

18. Plaintiff met with Residential Hall Director, Geno Hampton (hereinafter, "RHD Hampton") to discuss the situation that occurred earlier in the day. Plaintiff was informed by RHD Hampton that she needed to call a Residence Hall Director or Residential

Assistant on duty the next time she experiences harassment. RHD Hampton also informed Plaintiff she may move and recommended she speak with a black counselor.

19. On or about October 15, 2021, Plaintiff was contacted by David Stockton, the Director of Student Conduct (hereinafter, "Director Stockton"), to review CCTV footage. Director Stockton states that he sees Defendant Devin Mistry and another individual knocking on Plaintiff's door and then running behind the elevators. After this incident, another resident of the dormitory across the hall from Plaintiff, opens their door and looks around and then shuts it again.

20. On or about October 15, 2021, at approximately 10:57 a.m., Plaintiff received an email from Grace Koyer, another Resident Hall Director (hereinafter, "RHD Koyer") following up on the information Plaintiff had already shared with RHD Hampton, in addition requested to meet at 2:00 p.m. to speak about additional resources for Plaintiff.

21. On or about October 15, 2021, at approximately 3:47 p.m. Defendant Mistry and another individual began to make monkey noises out the window of their dormitory room. Both individuals were seen passing by Plaintiff's dormitory room. Defendant Mistry proceeded to bang on Plaintiff's door and both Defendant and the other individual ran and hid behind the elevators.

22. On or about October 15, 2021, at approximately 4:14 p.m., Plaintiff's roommate, Courtney Zanon, filed a Bias Incident Report, as a witness to the racist bullying, harassment, and discrimination exhibited by Defendant Mistry and another individual. In addition to the racist behavior, Ms. Zanon explained in her Bias Incident Report that she had experienced multiple incidents where the paper towel dispenser in the restroom was purposefully jammed, and she and Plaintiff had to clear it out.

4

23. On or about October 15, 2021, at approximately 4:17 p.m., RHD Hampton came to Plaintiff's room, after Plaintiff's report of racist behavior (monkey noises) and continued harassment (knocking on Plaintiff's door and running away) by Defendant Mistry. RHD Hampton expressed confusion, and stated he was under the impression Plaintiff was in danger. Plaintiff explained the situation again, RHD Hampton asked Plaintiff if she would like to move. Plaintiff explained she is not comfortable moving, as she is expected to provide evidence of the racist acts and harassment she is suffering and cannot do so somewhere else. Plaintiff explained further it seemed those investigating this incident were rushing and in a hurry to close the investigation too quickly.

24. During that same meeting, Plaintiff explained to RHD Hampton that Defendant Bekteshi had been purposefully jamming the paper towel dispenser, as a means of targeting and harassing Plaintiff, to which RHD Hampton inexplicably made a strange "goblin" sounding voice and said, "it's odd that they'd be actively planning your demise."

25. On or about October 16, 2021, at approximately 3:22 p.m., Plaintiff emailed RA Fox and informed him that Defendant Madigan took a nonconsensual photograph of her in the elevator.

26. On or about October 16, 2021, Plaintiff and Resident Hall Director Shannon Salter (hereinafter, "RHD Salter") and RHD Fox had an approximately 4-hour long conversation regarding the possibility of an emergency move and resources available.

27. On or about October 16, 2021, Plaintiff filed another Bias Incident Report regarding another situation in her GEEN class, where she experienced harassment at the hands of another male student talking about her looks and attempting to kick her under her chair.

At that point, a different male student told the first to stop, but not because he was doing the right thing, but because he, "didn't want to have to deal with her."

28. On or about October 16, 2021, at approximately 7:44 p.m., Plaintiff along with RHD Salter formulated and filed an additional Bias Incident Report, detailing the nonconsensual photograph taken of Plaintiff in the elevator.

29. On or about October 17, 2021, Andrea Sims, Plaintiff's mother, sent an email to Kristen Krepel, the Title IX Coordinator (hereinafter, the "Coordinator") and Cara Hardin, the Assistant Title IX Coordinator where she advised them of the racial harassment and discrimination, bullying, mental health toll, and issues facing Plaintiff heading into mid-terms, seeking guidance on what the school was doing and could do to remedy the situation.

30. On or about October 17, 2021, at approximately 11:55 a.m., Plaintiff emailed RHD Hampton, RHD Salter, RA Fox, and Andrea Sims regarding the names of the perpetrators of the racial discrimination, bullying, and harassment she had been facing. Plaintiff identified, Defendant Sierakowski as the individual making animal noises on October 15, 2021, along with Defendant Mistry; Defendant Mistry as the individual making animal noises, taking pictures, and banging on her dormitory room door, along with Defendant Sierakowski, also on October 15, 2021; and Defendant Madigan as the individual who on October 16, 2021, took the nonconsensual photograph of her in the elevator. Plaintiff stated she was still looking for the names of the other individuals involved, but that these individuals had been giving her the most trouble.

31. On or about October 15, 2021, at approximately 1:00 p.m., Plaintiff with the help of Resident Hall Director Sofie Cieslicki, moved into a temporary dormitory residence.

32. On or about October 18, 2021, at approximately 9:03 a.m., Plaintiff received an email from RHD Koyer regarding a permanent move into a new dormitory, due to the on-going racial discrimination and harassment directed at her.

33. On or about October 18, 2021, at approximately 9:55 a.m., Plaintiff received an email from Acting Vice President for Inclusive Excellence Joya Crear (hereinafter, "VP Crear"), to set up a meeting to discuss the incidents and current situation. Plaintiff explained to VP Crear the nature of the on-going racial discrimination and harassment and bullying she is the victim of, and that it is taking a horrific toll on her mental health and physical health, and ability to focus and study in the face of mid-terms. VP Crear recommended Plaintiff attend counseling at the Counseling Center, which Plaintiff described as unhelpful in the past.

34. On or about October 19, 2021, Plaintiff received a letter known as a "Stay Away Directive," regarding the investigation into the incidents of racial discrimination and harassment and asking that the Plaintiff refrain from having any contact with Defendant Mistry, Defendant Sierakowski, Defendant Madigan, and Defendant Bekteshi. The letter also stated that the above named were also sent the same letter. The letter asked for any evidence that could be helpful in the investigation and that VP Crear would be reaching out to Plaintiff as well.

35. On or about October 19, 2021, between approximately 8:45 a.m. and 9:50 a.m., while in the common dining hall, Plaintiff noticed a female student who had the picture of Plaintiff taken when she was in the restroom on her phone.

36. On or about October 19, 2021, at approximately 12:54 p.m., Plaintiff sent another email to VP Crear and expressed her concerns with regard to the racial discrimination and

7

harassment and bullying she was facing and that it was continuing in spite of the stay away directive. Plaintiff went on to detail that due to the lack of sound on the video footage, the visual footage would not allow those investigating to hear the racist animal noises Defendants were making toward her. She expressed a great deal of concern regarding the investigation into these incidents.

37. On or about October 20, 2021, Andrea Sims sent an email to Director David Stockton and VP Crear regarding the highly inappropriate photograph of Plaintiff, taken while she was in the restroom, now being circulated on Snapchat.

38. On or about October 21, 2021, Plaintiff sent an email to Director Stockton regarding Defendant Bekteshi violating the stay away order in the dining hall. Plaintiff informed Director Stockton that there are many seats where Defendant Bekteshi can sit, she chooses to sit very near Plaintiff. As Plaintiff walked by, the individual sitting with Defendant Bekteshi began making noises at Plaintiff.

39. On or about October 21, 2021, Director Stockton replied to Plaintiff's email regarding her dining hall experiences with Defendant Bekteshi and stated that so long as Defendant Bekteshi did not sit at the same table as Plaintiff, she was likely not violating the stay away directive.

40. On or about October 21, 2021, at approximately 12:10 p.m., Marek Trawicki told Plaintiff to drop the investigation, after seeing how poorly Plaintiff did on her final.

41. On or about October 21, 2021, Plaintiff received medical care from her primary care doctor, Dr. William Kipfel, who informed Plaintiff she had multiple ulcers in her GI tract and prescribed medication.

42. On or about October 23, 2021, Andrea Sims emailed Director Stockton, VP Crear, and Dean of Engineering Kristina Ropella detailing her concerns that the stay away directive is not being enforced, that not enough action has been taken, and that due to this and the ongoing harassment, bullying and discrimination, Plaintiff is failing and suffering detrimental psychological impacts.

43. On or about October 25, 2021, Andrea Sims received an email from Associate Dean of Students Erin Lazzar (hereinafter, "Assoc. Dean Lazzar"), where she introduced herself and advised that she would need Plaintiff's permission to speak with Andrea Sims.

44. On or about October 26, 2021, between approximately 11:35 a.m. and 11:55 a.m., 2-3 female students approach Plaintiff, in the dining hall, and informed her that a picture of her was being circulated, and that everyone was laughing at her.

45. On or about October 25, 2021, Plaintiff spoke to RHD Koyer who informed Plaintiff she had completed a Harassment Incident Report.

46. On or about October 26, 2021, between approximately 12:30 p.m. and 1:20 p.m., Plaintiff was in her BEIN 1100 lecture class, when two female students sitting behind Plaintiff began talking about Plaintiff's hair in a derogatory manner. One of the female students stated, "Ugh, I'm going to kill this girl."

47. On or about October 26, 2021, between approximately 1:20 p.m. and 1:30 p.m., Plaintiff ran into another student who also lived on the 12th floor, outside of her dormitory residence, who informed her that a picture of Plaintiff was taken without her consent and that picture is being circulated. The student stated he did not know when it was taken or how long it had been circulating, but that he felt bad for Plaintiff.

48. On or about October 27, 2021, Andrea Sims received a call from Assoc. Dean Lazzar stating Plaintiff had given her permission to speak with Andrea Sims. Associate Dean Lazzar also stated that videos had been reviewed, however they did not see anything. Approximately, 30 minutes prior to Andrea Sims receiving the above email, Plaintiff spoke to an individual named Jenna while she was having a panic attack due to not feeling safe or supported. Plaintiff's physical and mental health were diminishing as a result of the continued harassment. Plaintiff was experiencing more and more panic attacks and was unable to complete her school tasks as a result.

49. On or about October 28, 2021, Plaintiff received an email from Title 9 Coordinator Kristen Krepel (hereinafter, "Coordinator Krepel") regarding discussing a possible Title IX violation. Andrea Sims picked up Plaintiff from Defendant Marquette University on this day.

50. On or about October 29, 2021, Plaintiff and Andrea Sims attended a virtual Microsoft Teams call with Coordinator Krepel who stated she would be meeting with staff to discuss the investigation findings on November 1, 2021.

51. On or about November 3, 2021, Andrea Sims emailed Coordinator Krepel seeking an update on the investigation.

52. No further update was ever given to Plaintiff.

**<u>MARQUETTE UNIVERSITY POLICIES</u>**

53. At all times relevant, there was in effect Defendant Marquette University's multiple policies prohibiting any form of bullying, harassment, and discrimination. On their website, you can find their Mission and Diversity Statements. Wherein, in pertinent part their Statement on Diversity and Social Justice states: "We recognize and acknowledge

the negative impact of stereotypes, prejudice, discrimination, oppression, power and privilege on student's mental health."

54. At all times relevant, there was in effect Defendant Marquette University's Statement on Diversity and Social Justice, which states in relevant part: "We also pledge to take action when needed to ensure that all students are treated fairly as well as to compensate for obstacles and unequal treatment that can be set in place by individuals, institutions and society."

55. At all times relevant, there was in effect Defendant Marquette University's Office of Student Conduct, Student Conduct Procedures, which state at the outset, "However, a student or a recognized student group may be subject to disciplinary action, if it is established that the individual or the group was involved in acts or deeds that (1) prohibit the exercise of, interfere with or in any way restrict the rights and privileges of others; (2) violate university policy; (3) create a danger or threat of danger to other persons within the university community or interfere with the normal functions and operations of the university; and/or (4) violate existing federal, state, county and municipal laws or ordinances."

56. At all times relevant, there was in effect Defendant Marquette University's Community Expectations Ethos Statement, Statement 2 Respect for Others which states: "One value of learning lies in understanding what knowledge can contribute to the community. It is expected that students will be open to learning, including learning about and respecting persons and cultures different from their own. Members of the campus community must act out of Christian charity and mutual respect to establish an atmosphere of trust, without which there is no community.

Therefore, Marquette expects its members to behave toward one another with sensitivity, consideration, understanding, tolerance, and an active concern for the welfare of others. The university is particularly concerned that its members show respect for others regardless of race, creed, gender, disability, sexual orientation, or nationality and avoid all forms of harassing or offensive behaviors. This is especially important in the residence halls and other group living situations, where the sense of community is only as strong as the members make it."

57. At all times relevant, there was in effect Defendant Marquette University's Community Expectations Standards of Conduct which states in relevant part: "Because the university establishes high standards for membership, its standards of conduct are equally high and may exceed federal, state, or local requirements. When student behavior departs from the community expectations, members of the community, including students, are expected to challenge and confront these inappropriate behaviors. When that behavior becomes unacceptable, e.g., when it hurts others, detracts from the sense of community or is irresponsible, it will be addressed by peers or administrators who follow the procedures outlined in the student conduct code below."

58. At all times relevant, there was in effect Defendant Marquette University's Community Expectations Standards of Conduct which states in relevant part: "The following acts may subject students to disciplinary action: Verbally abusing or threatening any person, on or off the campus, including especially persons as student staff and MUPD officers; Interfering with safety and health of a member of the university community, on or off campus; Participating in stalking or harassment, as defined by the Harassment Policy; Engaging in harassment based on age, culture, faith, ethnicity, race, gender, sexual

orientation, language, disability or social class. (See Harassment Policy); Engaging in sexual misconduct, defined as any form of sexual contact with another person without the consent of that person, coercion, intimidation, exploitation or harassment; Violating university policies, rules, or regulations that are published in the Student Handbook, or other official university publications, policy documents, pledges, or agreements; Failing to comply with the directions of a university employee acting in the performance of his/her duties or failing to comply with the terms of a disciplinary decision; Engaging in acts or deeds that violate existing federal, state, county or municipal laws or ordinances; Not complying with Marquette's **Complicity Policy** by condoning, supporting, facilitating or encouraging another person's or group's behavior that violates any standard of conduct. Students are expected to remove themselves from locations where a policy is being violated and are encouraged to report the incident. Failure to leave an area where a regulation is being violated may result in a student being held accountable for a violation of this policy."[1]

59. At all times relevant, there was in effect Defendant Marquette University's Office of Student Development Policies and Procedures Harassment Policy which states in relevant part: "Marquette University prohibits harassment and discrimination on the basis of race, color, gender, age, sexual orientation, religion, disability, veteran's status or national origin, or any other characteristics protected by law, in its programs and activities. In addition to being contrary to the university's Mission and Guiding Values, harassment and discrimination are prohibited by this policy, the university's Sexual Harassment,

---

[1] See https://www.marquette.edu/student-development/policies/conduct-community-expectations.php#Standards_of_Conduct for complete list. Polices listed above are 5, 6, 10, 11, 13, 20, 22, 23, and 30 respectively.

Discrimination and Sexual Misconduct Policy, and state and federal laws. The university is dedicated to providing a prompt and thorough response to conduct that adversely impacts, or has the potential to adversely impact, the educational or work environment of Marquette University faculty, students, staff, guests, and visitors."

60. At all times relevant, there was in effect Defendant Marquette University's Harassment Policy which lists as Prohibited Conduct under this Policy: "**Harassment**, as defined by this Policy, includes any action, language or visual representation, based on any characteristic protected by law including race, color, gender, age, sexual orientation, religion, disability, veteran's status or national origin, that is sufficiently severe, pervasive, persistent or patently offensive that it has the effect of unreasonably interfering with that individual's work or academic performance, or that creates a hostile working, educational or living environment."

61. At all times relevant, there was in effect Defendant Marquette University's Harassment Policy which lists as Prohibited Conduct under this Policy: "**Doxing,** as defined as the public release of personal or identifying information about a member of the university community by a third party, that has the impact of humiliating, threatening, intimidating, or bringing harm to the identified individual."

62. At all times relevant, there was in effect Defendant Marquette University's Harassment Policy which lists as Prohibited Conduct under this Policy: "**Cyberbullying,** as defined as antagonistic and unwelcome behavior through an online medium towards a member of the university community that is severe or repeated and that would be likely to intimidate, hurt, demean, defame, control, or diminish the individual. Cyberbullying may include but

is not limited to comments and visual representations that contain slurs, epithets, and derogatory terms."

63. At all times relevant, there was in effect Defendant Marquette University's Office of Student Development Policies and Procedures, which also puts forth Stay Away Directives which states in pertinent part: "Marquette University's Stay Away Directives provide a mechanism to prohibit continued harassment and retaliation from occurring as a result of an alleged violation of the Marquette University's Title IX Sexual Harassment, Discrimination and Sexual Misconduct Policy. When a Stay Away Directive is requested, it will be adjusted to address contact, presence, proximity, and other aspects of safety as deemed necessary given the individual circumstances of each matter. Both parties to the Stay Away Directive shall comply with the requirements set forth in the Stay Away Directive.

It is the university's expectation that the respondent will remove himself/ herself from the proximity of the complainant. The intent of issuing a Stay Away Directive is to minimize the burden on the complainant whenever possible."

64. At all times relevant, there was in effect Defendant Marquette University's Division of Student Affairs oversaw Bias Incidents. Under this policy a Bias Incident is described as: "A bias incident is any discriminatory or hurtful act that appears to be motivated or is perceived by the victim or victims to be motivated by race, ethnicity, religion, age, national origin, sex, ability, gender identity or expression, sexual orientation, veteran status, socioeconomic status or language."

## COUNT I – AGAINST MARQUETTE UNIVERSITY
## WILLFUL AND WANTON SUPERVISION

65. Plaintiff adopts and incorporates the allegations contained in paragraphs 1-64 above as if set forth in this paragraph 65 herein.

66. At all times relevant, Defendant Marquette University had a duty to exercise reasonable care in the supervision of its employees and/or agents, including but not limited to its teachers, Resident Hall Directors, Residential Assistants, Coordinators, Deans, Directors, and Vice Presidents.

67. At all times relevant, Defendant Marquette University had a duty to protect Plaintiff from the ongoing known discrimination and harassment by Defendants Mistry, Sierakowski, Bekteshi, and Madigan.

68. At all times relevant, Defendant Marquette University had a duty to exercise reasonable care in the supervision of those on its premises, including all Defendants in this Complaint.

69. At all times relevant, Defendant Marquette University knew, or should have known that Defendants Mistry, Sierakowski, Bekteshi, and Madigan were using its premises to bully, harass, and discriminate against Plaintiff.

70. At all times relevant, Defendant Marquette University knew, or should have known that Plaintiff was the constant target of bullying, harassment, and discrimination at the hands of Defendants Mistry, Sierakowski, Bekteshi, and Madigan.

71. At all times relevant, Defendant Marquette University knew or should have known that its agents and employees, including its teachers, Resident Hall Directors, Residential Assistants, Coordinators, Deans, Directors, and Vice Presidents failed to prevent or protect Plaintiff from the bullying, harassment, and discrimination at the hands of Defendants Mistry, Sierakowski, Bekteshi, and Madigan.

72. At all relevant times, Defendant Marquette University had a duty to abide by all applicable federal, state, and local laws, including Title VI of the Civil Rights Act of 1964 and 42 U.S.C. 1983 Civil Rights.

73. At all relevant times, Defendant Marquette University had a duty to comply with and follow its own policies and procedures, as set forth on their website, in responding to, investigating, disciplining, preventing, and reporting the bullying, harassment, and discrimination faced by Plaintiff, in order to prevent and deter future incidents.

74. At all relevant times, Defendant Marquette University had a duty to protect and keep safe Plaintiff's mental health and well-being, physical well-being, emotional well-being, and to prevent and intervene where the bullying, harassment, and discrimination threat were known or should have been known by all Defendants.

75. In violation of its duties as aforesaid, Defendant Marquette University did commit one or more of the following acts or omissions:

    (a) Willfully and wantonly failed to protect Plaintiff from the reasonably foreseeable bullying, harassment, and discrimination by Defendants Mistry, Sierakowski, Bekteshi, and Madigan.

    (b) Willfully and wantonly failed to protect Plaintiff from the infliction of emotional distress from Defendants Mistry, Sierakowski, Bekteshi, and Madigan.

    (c) Willfully and wantonly failed to supervise Defendants Mistry, Sierakowski, Bekteshi, and Madigan's actions while on its premises.

    (d) Willfully and wantonly failed to ensure that is staff including teachers, Resident Hall Directors, Residential Assistants, Coordinators, Deans, Directors, and Vice Presidents were maintaining discipline as required by its own policies and procedures.

(e) Willfully and wantonly failed to ensure this its staff including teachers, Resident Hall Directors, Residential Assistants, Coordinators, Deans, Directors, and Vice Presidents accurately reported and investigated Defendants Mistry, Sierakowski, Bekteshi, and Madigan's bullying, harassment, and discrimination.

(f) Willfully and wantonly violated in relevant part its own Statement on Diversity and Social Justice.

(g) Willfully and wantonly violated in relevant part its own Office of Student Conduct, Student Conduct Procedures.

(h) Willfully and wantonly violated in relevant part its own Community Expectations Ethos Statement, Statement 2.

(i) Willfully and wantonly violated in relevant part its own Community Expectations Standards of Conduct.

(j) Willfully and wantonly violated its own Office of Student Development Policies and Procedures Harassment Policy.

(k) Willfully and wantonly violated its own Harassment Policy Prohibited Conduct, including Harassment, Doxing, and Cyberbullying.

(l) Willfully and wantonly violated its own Office of Student Development Policies and Procedures, which puts forth its Stay Away Directives, which include Title IX violations.

(m) Willfully and wantonly violated Title VI, Civil Rights Act of 1964 and 42 U.S.C. § 1983.

(n) Willfully and wantonly allowed staff employees and/or agents, including but not limited to its teachers, Resident Hall Directors, Residential Assistants, Coordinators,

Deans, Directors, and Vice Presidents to neglect Plaintiff by failing to create a safe learning environment for Plaintiff, and failing to intervene and protect Plaintiff from the known bullying, harassment, and discrimination committed by Defendants Mistry, Sierakowski, Bekteshi, and Madigan on its premises.

76. As a direct and proximate result of Defendant Marquette University's conduct, Plaintiff has suffered and will continue to suffer severe emotional distress, resulting in physical manifestations, embarrassment, loss of self-esteem, humiliation, and psychological injuries; was prevented from and continues to be prevented from performing her normal daily activities, including attending university and obtaining a post-secondary degree; has incurred and will continue to incur expenses for medical and psychological treatment, therapy and counseling; and has incurred loss of tuition monies.

WHEREFORE, Plaintiff demands judgment against the Defendants for compensatory damages in an amount in excess of fifty thousand dollars ($50,000.00) and for exemplary damages in an amount that will serve to punish the Defendants and deter the Defendants from similar conduct and for their costs and expenses and for all such and further relief as the Court deems to be fair and just.

## COUNT II – WILLFUL AND WANTON CONDUCT
## AGAINST DEFENDANTS DEVIN MISTRY, JAKE SIERAKOWSKI, SERENA BEKTESHI, AND CHARLIE MADIGAN

77. Plaintiff adopts and incorporates the allegations contained in paragraphs 1-76 above as if set forth in this paragraph 77 herein.

78. At all times relevant, Defendants Mistry, Sierakowski, Bekteshi, and Madigan knew or should have known the acts of bullying, harassment, and discrimination directed by them toward Plaintiff would cause severe emotional, mental, and physical distress.

79. At all times relevant, Defendants Mistry, Sierakowski, Bekteshi, and Madigan knew or should have known the acts of bullying, harassment, and discrimination directed by them toward Plaintiff were unwanted and did in fact cause Plaintiff to suffer severe emotional, mental, and physical distress.

80. At all times relevant, Defendants Mistry, Sierakowski, Bekteshi, and Madigan knew or should have known the acts of bullying, harassment, and discrimination directed by them toward Plaintiff were not permitted on Defendant Marquette University premises.

81. At all times relevant, Defendants Mistry, Sierakowski, Bekteshi, and Madigan knew or should have known the acts of bullying, harassment, and discrimination directed by them toward Plaintiff were in direct violation of Defendant Marquette University's Stay Away Directive they were party to.

82. At all times relevant, Defendants Mistry, Sierakowski, Bekteshi, and Madigan knew or should have known they had a duty to comply with and follow all of Defendant Marquette University's policies and procedures, as set forth on their website, with regard to the bullying, harassment, and discrimination suffered by the Plaintiff at their hands.

83. At all times relevant, Defendants Mistry, Sierakowski, Bekteshi, and Madigan knew or should have known they were violating Defendant Marquette University's policies and procedures to prevent and not participate in bullying, harassment, and discrimination.

84. Defendants Mistry, Sierakowski, Bekteshi, and Madigan, did wantonly and willfully commit one or more of the following acts or omissions:

(o) Willfully and wantonly failed to stop their acts of bullying, harassment, and discrimination causing Plaintiff to suffer the infliction of emotional distress.

(p) Willfully and wantonly failed to follow Defendant Marquette University's policies and procedures against bullying, harassment, and discrimination while on its premises.

(q) Willfully and wantonly failed to ensure that they followed disciplinary recommendations by Defendant Marquette University's teachers, Resident Hall Directors, Residential Assistants, Coordinators, Deans, Directors, and Vice Presidents including its Stay Away Directive.

(r) Willfully and wantonly violated in relevant part Defendant Marquette University's Statement on Diversity and Social Justice.

(s) Willfully and wantonly violated in relevant part Defendant Marquette University's Office of Student Conduct, Student Conduct Procedures.

(t) Willfully and wantonly violated in relevant part Defendant Marquette University's Community Expectations Ethos Statement, Statement 2.

(u) Willfully and wantonly violated in relevant part Defendant Marquette University's Community Expectations Standards of Conduct.

(v) Willfully and wantonly violated Defendant Marquette University's Office of Student Development Policies and Procedures Harassment Policy.

(w) Willfully and wantonly violated Defendant Marquette University's Harassment Policy Prohibited Conduct, including Harassment, Doxing, and Cyberbullying.

(x) Willfully and wantonly violated Defendant Marquette University's Office of Student Development Policies and Procedures, which puts forth Stay Away Directives, which include Title IX violations.

(y) Willfully and wantonly failed to abide by and follow Defendant Marquette University's policies and procedures mandating a safe learning environment, by

continuing their reckless and conscious disregard for Plaintiff, by participating in their relentless bullying, harassment, and discrimination of Plaintiff, on the premises.

(z) Defendants recklessly or consciously disregarded the substantial risks that their actions perpetuated against Plaintiff and were otherwise willful and wanton in their conscious disregard for the safety of Plaintiff.

85. As a direct and proximate result of Defendant Mistry, Sierakowski, Bekteshi, and Madigan's conduct, Plaintiff has suffered and will continue to suffer severe emotional distress, resulting in physical manifestations, embarrassment, loss of self-esteem, humiliation, and psychological injuries; was prevented from and continues to be prevented from performing her normal daily activities, including attending university and obtaining a post-secondary degree; has incurred and will continue to incur expenses for medical and psychological treatment, therapy and counseling; and has incurred loss of tuition monies.

WHEREFORE, Plaintiff demands judgment against the Defendants for compensatory damages in an amount in excess of fifty thousand dollars ($50,000.00) and for exemplary damages in an amount that will serve to punish the Defendants and deter the Defendants from similar conduct and for their costs and expenses and for all such and further relief as the Court deems to be fair and just.

## COUNT III – INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS – AGAINST DEFENDANT MARQUETTE UNIVERSITY

86. The Plaintiff adopts and incorporates the allegations set forth in paragraphs 1-85 of this Complaint above, as though fully set forth in paragraph 86 herein.

87. At all times relevant, Defendant Marquette University owed Plaintiff a duty of protecting her from the bullying, harassment, and discrimination it knew or should have known was happening at the hands of Defendants Mistry, Sierakowski, Bekteshi, and Madigan.

88. At all times relevant, Defendant Marquette University by and through its teachers, Resident Hall Directors, Residential Assistants, Coordinators, Deans, Directors, and Vice Presidents held a position of power and authority over Plaintiff while she was on the premises.

89. At all times relevant, Defendant Marquette University knew or should have known that Plaintiff did not consent to the bullying, harassment, and discrimination she was being subjected to by Defendants Mistry, Sierakowski, Bekteshi, and Madigan.

90. At all times relevant, Defendant Marquette University committed extreme and outrageous acts by condoning, approving of, and otherwise allowing the bullying, harassment, and discrimination against Plaintiff to continue unfettered.

91. At all times relevant, Defendant Marquette University committed extreme and outrageous acts by condoning, fostering, approving, and/or failing to eradicate a toxic culture of bullying, harassment, and discrimination among its students on the premises.

92. At all times relevant, Defendant Marquette University intentionally refrained from taking action to enforce its own policies, procedures, rules, and regulations, as well as federal laws against ongoing bullying, harassment, and discrimination, despite knowledge of said misconduct.

93. Defendant Marquette University engaged in extreme and outrageous conduct by ignoring verbal abuse and harassment, bullying, and discrimination endured by Plaintiff, despite possessing information and/or witnessing events to the contrary, tolerating bullying, harassment, and discrimination in direct violation of its own policies, detrimentally effecting Plaintiff's mental health and substantially interfering with Plaintiff's academic performance and ability to benefit from school services, not observing, supervising, or

investigating allegations of bullying, harassment, and discrimination; allowing students who engaged in the bullying, harassment, and discrimination around Plaintiff; not taking requisite action to discipline students involved in the bullying, harassment, and discrimination, and providing no viable solution whatsoever to address Plaintiff's safety concerns.

94. Defendant Marquette University acted with willful malice and knowledge of or with conscious disregard of the harm that would be inflicted upon Plaintiff by allowing Defendants Mistry, Sierakowski, Bekteshi, and Madigan to be unsupervised on the premises.

95. Defendant Marquette University's conduct caused the Plaintiff to suffer fright, grief, worry, shame, humiliation, and severe or extreme emotional distress.

96. Defendant Marquette University's conduct actually and proximately caused emotional distress and proximately caused the Plaintiff to suffer injuries, including injuries to his reputation and loss of career opportunities.

WHEREFORE, Plaintiff demands judgment against the Defendants for compensatory damages in an amount in excess of fifty thousand dollars ($50,000.00) and for exemplary damages in an amount that will serve to punish the Defendants and deter the Defendants from similar conduct and for their costs and expenses and for all such and further relief as the Court deems to be fair and just.

## COUNT IV – INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS – AGAINST DEFENDANTS MISTRY, SIERAKOWSKI, BEKTESHI, AND MADIGAN

97. The Plaintiff adopts and incorporates the allegations set forth in paragraphs 1-96 of this Complaint above, as though fully set forth in paragraph 97 herein.

98. At all times relevant, Defendant's Mistry, Sierakowski, Bekteshi, and Madigan knew or should have known that Plaintiff did not consent to the bullying, harassment, and discrimination they subjected her to.

99. At all times relevant, Defendants Mistry, Sierakowski, Bekteshi, and Madigan committed extreme and outrageous acts of bullying, harassment, and discrimination against Plaintiff.

100. At all times relevant, Defendants Mistry, Sierakowski, Bekteshi, and Madigan committed extreme and outrageous acts by participating in a toxic culture of bullying, harassment, and discrimination against Plaintiff on the premises.

101. At all times relevant, Defendants Mistry, Sierakowski, Bekteshi, and Madigan intentionally rebuffed and otherwise did willfully and wantonly fail to comply with Defendant Marquette University's policies, procedures, rules, and regulations against ongoing bullying, harassment, and discrimination.

102. Defendants Mistry, Sierakowski, Bekteshi, and Madigan engaged in extreme and outrageous conduct by engaging verbal abuse and harassment, bullying, and discrimination aimed at Plaintiff, despite those actions being taken in direct violation of Defendant Marquette's policies, detrimentally effecting Plaintiff's mental health and substantially interfering with Plaintiff's academic performance and ability to benefit from school services; violating the Stay Away Directive regarding their bullying, harassment, and discrimination and continuing to come around Plaintiff.

103. Defendants acted with willful malice and knowledge of or with conscious disregard of the harm that would be inflicted upon Plaintiff by their bullying, harassment, and discrimination.

104. The Defendants' conduct caused the Plaintiff to suffer fright, grief, worry, shame, humiliation, and severe or extreme emotional distress.

105. The Defendants conduct actually and proximately caused emotional distress and proximately caused the Plaintiff to suffer injuries, including injuries to his reputation and loss of career opportunities.

WHEREFORE, Plaintiff demands judgment against the Defendants for compensatory damages in an amount in excess of fifty thousand dollars ($50,000.00) and for exemplary damages in an amount that will serve to punish the Defendants and deter the Defendants from similar conduct and for their costs and expenses and for all such and further relief as the Court deems to be fair and just.

### COUNT V - NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS – AGAINST ALL DEFENDANTS

106. The Plaintiff adopts and incorporates the allegations set forth in paragraphs 1-105 of this Complaint above, as though fully set forth in paragraph 106 herein.

107. The Defendants owed the Plaintiff a duty to protect her from bullying, harassment, and discrimination.

108. The Defendants owed the Plaintiff a duty not to allow and/or participate in the continued bullying, harassment, and discrimination.

109. The Defendants breached one or more of the following duties owed to the Plaintiff in one or more of the following ways, all of which were done directly toward Plaintiff within the zone of physical danger:

   a. made or allowed to be made racist animal noises directed at the Plaintiff;

   b. caused or allowed to be caused continued harassment of Plaintiff within classrooms, her dormitory residence, and on the premises;

c. took or allowed to be taken nonconsensual photographs of Plaintiff in a private setting;

d. disseminated or allowed to be disseminated those nonconsensual photographs over social media platforms;

e. violated university policies and procedures on bullying, harassment, discrimination, doxing, and cyberbullying;

f. violated university policies on disciplinary actions and investigations.

110.     As a direct and proximate result of one or more of the preceding negligent acts and omissions by Defendant Mistry, Sierakowski, Bekteshi, and Madigan, Plaintiff has suffered from injuries, including but not limited to humiliation, fright, grief, worry, shame, physical and emotional distress, and severe and extreme emotional distress.

111.     Plaintiff suffered from severe physical illness as a proximate result of Defendant Mistry, Sierakowski, Bekteshi, and Madigan's actions, and seriously affected her psychological well-being.

WHEREFORE, Plaintiff demands judgment against the Defendants for compensatory damages in an amount in excess of fifty thousand dollars ($50,000.00) and for exemplary damages in an amount that will serve to punish the Defendants and deter the Defendants from similar conduct and for their costs and expenses and for all such and further relief as the Court deems to be fair and just.

## COUNT VI – NEGLIGENCE – DEFENDANT MARQUETTE UNIVERSITY

112.     The Plaintiff adopts and incorporates the allegations set forth in paragraphs 1-111 of this Complaint above, as though fully set forth in paragraph 112 herein.

113.     Defendant Marquette University had a duty to and yet failed to uphold and follow its own policies and procedures protecting students from bullying, harassment, and discrimination.

114.    Defendant Marquette University had a duty to and yet failed to fully investigate, in a timely manner, Plaintiff's allegations of bullying, harassment, and discrimination.

115.    Defendant Marquette University had a duty to and yet failed to follow through and uphold its Stay Away Directive keeping Defendants Mistry, Sierakowski, Bekteshi, and Madigan away from Plaintiff, ensuring her safety and wellbeing.

116.    As a direct and proximate result of one or more of the preceding negligent acts and omissions by Defendant Marquette University, Plaintiff has suffered humiliation, fright, grief, worry, shame, and severe and extreme emotional distress.

WHEREFORE, Plaintiff demands judgment against the Defendants for compensatory damages in an amount in excess of fifty thousand dollars ($50,000.00) and for exemplary damages in an amount that will serve to punish the Defendants and deter the Defendants from similar conduct and for their costs and expenses and for all such and further relief as the Court deems to be fair and just.

## COUNT VII – CIVIL RIGHTS VIOLATION UNDER 42 U.S.C. § 1983: EQUAL PROTECTION

117.    The Plaintiff adopts and incorporates the allegations set forth in paragraphs 1-116 of this Complaint above, as though fully set forth in paragraph 117 herein.

118.    At all times relevant, Defendant Marquette University was acting under color of law.

119.    That the above actions by Defendant Marquette University have resulted in the denial of equal protection rights, as a "class of one," all in violation of the Fourteenth Amendment to the United States Constitution, as Plaintiff was harassed, bullied, and discriminated, all against her will, and differently than those similarly situated students.

120. That the actions of Defendant Marquette University were the result of utter indifference and conscious disregard against Plaintiff, and said actions and denials were taken without any rational basis.

121. That by reason of the aforesaid actions, Defendant Marquette University's action exhibit deliberate indifference to and/or reckless disregard for the constitutional rights of Plaintiff and other similarly situated students, all in violation of her constitutional rights.

122. Plaintiff was intentionally treated differently from the rest of her peers and there was no rational basis for the disparate treatment, including being subject to harassment, bullying, and discrimination.

123. Defendant Marquette University did not take adequate actions to prevent or deter the conduct of Defendants Mistry, Sierakowski, Bekteshi, and Madigan.

124. Defendant Marquette University purports to follow its policies outlined on its website of zero tolerance for harassment, bullying, and discrimination.

125. Defendant Marquette University failed to follow its policies, including:

(a) Upon information and belief, failing to protect Plaintiff from the reasonably foreseeable bullying, harassment, and discrimination by Defendants Mistry, Sierakowski, Bekteshi, and Madigan.

(b) Upon information and belief, failing to protect Plaintiff from the infliction of emotional distress from Defendants Mistry, Sierakowski, Bekteshi, and Madigan.

(c) Upon information and belief, failing to supervise Defendants Mistry, Sierakowski, Bekteshi, and Madigan's actions while on its premises.

(d) Upon information and belief, failing to ensure that is staff including teachers, Resident Hall Directors, Residential Assistants, Coordinators, Deans, Directors, and Vice Presidents were maintaining discipline as required by its own policies and procedures.

(e) Upon information and belief, failing to ensure this its staff including teachers, Resident Hall Directors, Residential Assistants, Coordinators, Deans, Directors, and Vice Presidents accurately reported and investigated Defendants Mistry, Sierakowski, Bekteshi, and Madigan's bullying, harassment, and discrimination.

(f) Upon information and belief, failing to administer and follow in relevant part its own Statement on Diversity and Social Justice.

(g) Upon information and belief, failing to administer and follow in relevant part its own Office of Student Conduct, Student Conduct Procedures.

(h) Upon information and belief, failing to administer and follow in relevant part its own Community Expectations Ethos Statement, Statement 2.

(i) Upon information and belief, failing to administer and follow in relevant part its own Community Expectations Standards of Conduct.

(j) Upon information and belief, failing to administer and follow its own Office of Student Development Policies and Procedures Harassment Policy.

(k) Upon information and belief, failing to administer and follow its own Harassment Policy Prohibited Conduct, including Harassment, Doxing, and Cyberbullying.

(l) Upon information and belief, failing to administer and follow its own Office of Student Development Policies and Procedures, which puts forth its Stay Away Directives, which include Title IX violations.

(m) Upon information and belief, allowing staff employees and/or agents, including but not limited to its teachers, Resident Hall Directors, Residential Assistants, Coordinators, Deans, Directors, and Vice Presidents to neglect Plaintiff by failing to create a safe learning environment for Plaintiff, and failing to intervene and protect Plaintiff from the known bullying, harassment, and discrimination committed by Defendants Mistry, Sierakowski, Bekteshi, and Madigan on its premises.

126.     As a direct and proximate result of one or more of the aforesaid acts and omissions by Defendant Marquette University, Plaintiff suffered and continues to suffer a deprivation of her rights secured to her by the Fourteenth Amendment of the United State Constitution and is thus entitled to an award of monetary damages.

127.     As a direct and proximate result of one or more of the aforesaid acts and omissions by Defendant Marquette University, Plaintiff suffered humiliation, fright, grief, worry, shame, and severe and extreme emotional distress.

WHEREFORE, Plaintiff demands judgment against the Defendants for compensatory damages in an amount in excess of fifty thousand dollars ($50,000.00) and for exemplary damages in an amount that will serve to punish the Defendants and deter the Defendants from similar conduct and for their costs and expenses and for all such and further relief as the Court deems to be fair and just.

Respectfully submitted,
**AKIRA SIMS**

By: /s/ John C. Kreamer
One of her Attorneys

John C. Kreamer
Kreamer Law Group, LLC
1100 E. Warrenville Rd., Ste.135
Naperville, Illinois 60563
T.  630- 857-3609
F. 630-597-9532
Firm #45899
Email: jckreamer@kreamerlawgroup.com