UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

AKIRA SIMS,

    Plaintiff,

v.

MARQUETTE UNIVERSITY, et. al,

    Defendant.

Case No. 2:23-1154
Judge Stadtmueller

### DEVIN MISTRY'S AND SERENA BEKTESHI'S MEMORANDUM IN SUPPORT OF MOTION TO DISMISS

Defendants Serena Bekteshi ("Bekteshi") and Devin Mistry ("Mistry"), by and through their respective attorneys, submit the following memorandum in support of their Motion to Dismiss:

### LEGAL STANDARD

Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 1949 (2009). "As the [Supreme] court held in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955 (2007), the pleading standard Rule 8 announces does not require detailed factual allegations, but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* "A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do." *Id.* "Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement." *Id.*

A motion under Federal Rule of Civil Procedure 12(b)(6) tests the sufficiency of the complaint for failure to state a claim upon which relief can be granted. "To survive a motion to

1

dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim upon which relief that is plausible on its face." *Id.*(citing *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "The plausibility standard is not akin to a '"probability requirement,"' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id.*

"The tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Id.* "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* "Determining whether a complaint states a plausible claim for relief will…be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id.*

## ARGUMENT

Plaintiff Arika Sims' ("Sims") Second Amended Complaint fails to plausibly state claims against Bekteshi and Mistry upon which relief may be granted. The Second Amended Complaint contains legal conclusions and formulaic recitations of the elements of the causes of action without alleging sufficient factual allegations which show plausible entitlement to relief. As such, this court should grant Bekteshi's and Mistry's Motion to Dismiss.

I.  THE NEGLIGENCE CLAIM.

Sims' first cause of action against Bekteshi and Mistry is for negligence. Sims broadly alleges that Bekteshi and Mistry knew or should have known that the "acts of bullying, threats,

2

harassment, discrimination, retaliation, and physical and mental abuse" directed by the "defendants" as a group toward her would cause severe distress and that such acts were not permitted by Marquette's policies or the "Stay Away Directive." (Dk. 35, ¶¶ 96-102). Sims further alleges that Bekteshi and Mistry, along with the other individually named defendants, participated in a "campaign of discrimination and harassment" against her. (Dk. 35, ¶ 103). As a result, Sims alleges she suffered severe emotional distress. (Dk. 35, ¶ 104).

"Whether a complaint states a claim for common-law negligence depends on whether [the plaintiff] sufficiently pled facts, which if proven true, would establish all four required elements of an actionable negligence claim." *Nichols v. Progressive Northern Ins. Co.*, 308 Wis. 2d 17, 27, 746 N.W.2d 220, 225 (2008) (citing *Hoida, Inc. v. M & I Midstate Bank,* 2006 WI 69, ¶ 23, 291 Wis. 2d 283, 717 N.W.2d 17). "A plaintiff must prove four elements to establish negligence: duty, breach, causation, and damages." *Skindzelewski v. Smith*, 2020 WI 57, ¶ 8, 392 Wis. 2d 117, 944 N.W.2d 575.

"The first element of a common-law negligence claim requires the plaintiff to establish the existence of a duty of care on the part of the defendant." *Nichols*, 308 Wis. 2d at 28. "The test of negligence is whether the conduct foreseeably creates an unreasonable risk to others." *Id.; see also* WIS JI-CIVIL 1005. "Whether there is a duty may depend on the relationship between the parties or whether the alleged tortfeasor assumed a special role in regard to the injured party." *Hoida, Inc.*, 2006 WI 69, ¶ 32. "To allege appropriately a duty of care, [a complaint is] required to state general facts setting forth that the defendant had knowledge or should have had knowledge of a potential and unreasonable risk." *Nichols,* 308 Wis. 2d at 28(citing *Doe v. Archdiocese of Milwaukee*, 2005 WI 123, ¶ 36, 284 Wis. 2d 307, 700 N.W.2d 180).

3

"In negligence cases, the test for causation is whether the conduct at issue was a substantial factor in producing plaintiff's injury." *Emer's Camper Corral, LLC v. Alderman*, 2020 WI 46, ¶ 21, 391 Wis. 2d 674, 943 N.W.2d 513; *see also* WIS JI-CIVIL 1500. "For conduct to be deemed a "substantial factor," it must have "such an effect in producing the injury as to lead a reasonable person to regard it as a cause, using that word in the popular sense." *Toeller v. Mutual Serv. Cas. Ins. Co.,* 115 Wis. 2d 631, 637, 340 N.W.2d 923 (Ct. App. 1983). "The mere possibility of harm is insufficient to establish negligence." *University Dodge, Inc. v. Drott Tractor Co., Inc.*, 55 Wis. 2d 396, 399, 198 N.W.2d 621 (1972). "The duty to act or refrain from acting in a particular case arises from probabilities, rather than from bare possibilities of injury." *Siegler v. Kobinsky*, 314 Wis. 2d 784, 792, 762 N.W.2d 706, 709 (Ct. App. 2008).

A.  **BEKTESHI**

Sims advances the following specific factual allegations against Bekteshi: (1) Bekteshi purposefully jammed the paper towel dispenser in the bathroom to target and harass her; (2) Bekteshi circulated a photograph of her taken in the elevator by another student on Snapchat; (3) Bekteshi received a "Stay Away Directive" from Marquette asking Bekteshi to refrain from having contact with her, and (4) following receipt of the "Stay Away Directive," Bekteshi sat near her in the dining hall. (Dk. 35, ¶¶ 30, 31, 42, 46)[1]. Despite the lack of any substantive factual basis to support the same against Bekteshi, Sims then broadly alleges that Bekteshi and the other individually named defendants "engaged in a pattern of extreme and outrageous conduct against [her], including but not limited to repeatedly making racist remarks about [her], making disparaging monkey notices directed at [her], stalking [her] by following her throughout campus,

---

[1] These four allegations are the only specific allegations that Sims sets forth against Bekteshi. For sake of brevity, they will not be repeated throughout this Memorandum.

4

making obscene gestures toward [her], physically threatening [her] safety and security, secreting recorded [her], and took unauthorized photographs of [her]." (Dk. 35, ¶ 15).

These facts, accepted as true, fail to plausibly state a claim upon which relief may be granted against Bekteshi for negligence. Sims fails to plausibly establish any of the four elements of a negligence claim. First, Sims fails to plead sufficient facts to establish the existence of a duty of care on the part of Bekteshi. Sims alleges that she suffered from severe emotional distress because of bullying, harassment, retaliation, discrimination, and physical and mental abuse. However, the Second Amended Complaint does not allege any specific act or omission on Bekteshi's part that can reasonably demonstrate that Betkeshi knew, or should have known, that by doing said acts, she was creating an unreasonable risk of harm.

The only allegations against Bekteshi are that she jammed a paper towel dispenser, circulated a photograph of Sims taken in an elevator, and sat near Sims in the dining hall. None of this conduct, accepted as true, foreseeably creates an unreasonable risk to others. Therefore, Sims fails to plead sufficient facts to plausibly establish a duty of care on Bekteshi's part.

Sims also fails to plead sufficient factual allegations to plausibly establish that Bekteshi's actions were a substantial factor in causing her severe emotional distress. The Second Amended Complaint contains no allegation that Bekteshi made any racial remark about Sims, made any monkey and/or otherwise disparaging noises toward Sims, followed Sims throughout campus, made any obscene gesture toward Sims, physically threatened Sims, recorded Sims, or took a photograph of Sims. The only arguable indirect contact Bekteshi had with Sims was in the dining hall. Without more, this indirect contact is insufficient to reasonably infer that Bekteshi caused the alleged severe emotional distress. Sims' specific allegations against Bekteshi cannot reasonably be held to be a substantial factor in producing the alleged severe emotional distress. According to

5

the factual allegations in the Second Amended Complaint, Bekteshi did not engage in any of the acts that are alleged to have caused Sims severe emotional distress. Therefore, Sims fails to plead sufficient facts to plausibly establish a negligence claim against Bekteshi.

### B. MISTRY

Sims advances the following specific factual allegations against Mistry: (1) on October 15, 2021, Mistry and another individual knocked on her door and then ran behind the elevators; (2) on October 15, 2021, Mistry and another individual made monkey noises "out the window of their dormitory room," allegedly "targeting" plaintiff; and (3) on or after October 16, 2021, Mistry circulated a photograph of Sims taken in the elevator by another student on Snapchat. (Dk. 35, ¶¶ 25, 27, 31). The Second Amended Complaint includes no allegations that Mistry ever met or interacted with Sims, on any occasion. Despite the lack of any substantive factual basis to support the same against Mistry, Sims then broadly alleges that Mistry and the other individually named defendants "engaged in a pattern of extreme and outrageous conduct against [her], including but not limited to repeatedly making racist remarks about [her], making disparaging monkey notices directed at [her], stalking [her] by following her throughout campus, making obscene gestures toward [her], physically threatening [her] safety and security, secreting recorded [her], and took unauthorized photographs of [her]." (Dk. 35, ¶ 15).

These facts, accepted as true, fail to plausibly state a claim upon which relief may be granted against Mistry for negligence. Sims fails to plead sufficient facts to establish the existence of a duty of care on the part of Mistry toward Sims. Sims alleges that she suffered from severe emotional distress because of "bullying, harassment, retaliation, discrimination, and physical and mental abuse" by all of the student defendants, but nowhere alleges Mistry was aware of or connected to any conduct by any other defendant. The Second Amended Complaint does not allege

6

any specific act or omission on Mistry's part that can plausibly demonstrate that Mistry knew, or should have known, that by engaging in one door knocking, making animal noises in his own dorm room, and sharing a photo on Snapchat, he was creating an unreasonable risk of harm to Sims.

None of the specific conduct alleged as to Mistry, accepted as true, foreseeably creates an unreasonable risk to others. Therefore, Sims fails to plead sufficient facts to plausibly establish a duty of care on Mistry's part.

Sims also fails to plead sufficient factual allegations to plausibly establish that Mistry's isolated actions on October 15, 2021 were a substantial factor in causing her severe emotional distress. The Second Amended Complaint contains no allegation that Mistry made any racial remark about Sims, engaged in any bullying, followed Sims throughout campus, made any obscene gesture toward Sims, physically threatened Sims, or recorded Sims. The only arguable indirect contact Mistry had with Sims was knocking on her door and running away. This conduct is insufficient to reasonably or plausibly infer that Mistry caused the alleged severe emotional distress. Sims' specific allegations against Mistry cannot reasonably be held to be a substantial factor in producing the alleged severe emotional distress. Therefore, Sims fails to plead sufficient facts to plausibly establish a negligence claim against Mistry.

## II. THE INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS CLAIM.

Sims' second cause of action against Bekteshi and Mistry is for intentional infliction of emotional distress. Sims broadly alleges that Bekteshi and Mistry committed extreme and outrageous acts of bullying, threats, racial and sexual harassment and discrimination, retaliation, and physical and mental abuse directed toward her and that they knew, or should have known, that she did not consent to the same. (Dk. 35, ¶¶ 117-119). Sims further alleges that Bekteshi and Mistry

7

intentionally violated Marquette's policies. (Dk. 35, ¶¶ 120-122). As a result, Sims alleges she suffered severe emotional distress. (Dk. 35, ¶¶ 123-124).

"To establish intentional infliction of emotional distress, a plaintiff must show: (1) that defendant's conduct was intended to cause emotional distress; (2) that the conduct was extreme and outrageous; (3) that the conduct was the cause of the plaintiff's injury; and (4) that the emotional distress was extreme and disabling. *Hillman v. Columbia County*, 164 Wis. 2d 376, 396, 474 N.W.2d 913, 921 (Ct. App. 1991); *see also* WIS JI-CIVIL 2725. "In order for conduct to reach the standard of being extreme and outrageous, that conduct must be such that an average member of the community would find it to be a complete denial of the individual's dignity as a person." *Alsteen v. Gehl*, 21 Wis. 2d 349, 359-60, 124 N.W.2d 312, 318 (1963). "Mere carelessness or bad manners is insufficient." *Id*. at 360. In *Hillman*, Hillman alleged intentional infliction of emotional distress. 164 Wis. 2d at 396. His complaint stated that he "suffered severe mental distress." The court held that Hillman failed to state a claim upon which relief could be granted because he did not allege the distress was disabling. *Id.*

### A. BEKTESHI

The alleged facts against Bekteshi, accepted as true, fail to plausibly state a claim upon which relief may be granted against Bekteshi for intentional infliction of emotional distress. Similar to *Hillman*, Sims fails to allege that her emotional distress was disabling. Under *Hillman*, Sims has failed to state a claim upon which relief may be granted.

To the extent that this court does not dismiss the intentional infliction of emotional distress claim under *Hillman* for Sims' failure to allege that her emotional distress is disabling, the claim still fails. Sims fails to plausibly establish any of the four elements of an intentional infliction of emotional distress claim. There is no factual allegation that Bekteshi intended to cause Sims

8

emotional distress by jamming the paper towel dispenser, by circulating a photograph of Sims from an elevator, or by sitting near Sims in the dining hall. There is no allegation that Bekteshi had knowledge of Marquette's policies or that she intended to violate the same to cause Sims emotional distress.

Furthermore, to state a claim for intentional infliction of emotional distress, Sims must plead sufficient facts to reasonably demonstrate that Bekteshi's conduct was the cause of her injury. Sims fails to do so. The Second Amended Complaint contains no allegation that Bekteshi made any racial remark about Sims, made any monkey and/or otherwise disparaging noises toward Sims, followed Sims throughout campus, made any obscene gesture toward Sims, physically threatened Sims, recorded Sims, or took a photograph of Sims. The only arguable indirect contact Bekteshi had with Sims was in the dining hall. Without more, this indirect contact is insufficient to reasonably infer that Bekteshi caused the alleged severe emotional distress. Sims' specific allegations against Bekteshi cannot reasonably be held to be a substantial factor in producing the alleged severe emotional distress.

Lastly, to state a claim for intentional infliction of emotional distress, Sims must plead facts which plausibly show that Bekteshi's conduct was extreme and outrageous. For the conduct to be deemed extreme and outrageous, "an average member of the community would need to find it a complete denial of the individual's dignity as a person." *Alsteen*, 21 Wis. 2d at 358-60; WIS JI-CIVIL 2725. When the factual allegations against Bekteshi are placed into context relative to the other allegations set forth in the Second Amended Complaint, the only reasonable conclusion is that Betkeshi did not engage in extreme and outrageous conduct. Betkeshi did not make any racial remark about Sims, did not make any monkey and/or otherwise disparaging noises toward Sims, did not follow Sims throughout campus, did not make any obscene gesture toward Sims, did not

physically threatened Sims, did not recorded Sims, and did not take a photograph of Sims. Jamming a paper towel dispenser, circulating a photograph of Sims from an elevator, and sitting near Sims in the dining hall cannot reasonably be held to be a denial of Sims' dignity as a person. As such, Sims fails to plead sufficient facts to plausibly establish an intentional infliction of emotional distress claim against Bekteshi.

### B. MISTRY

As with Bekteshi, the alleged facts against Mistry, accepted as true, fail to plausibly state a claim upon which relief may be granted against Mistry for intentional infliction of emotional distress. Indeed, Sims fails to plausibly establish any of the four elements of an intentional infliction of emotional distress claim.

There is no factual allegation that Mistry intended to cause Sims emotional distress by knocking on her door, making monkey noises in his own room, or by circulating a photograph of Sims from an elevator. There is no allegation that Mistry had knowledge of Marquette's policies or that he intended to violate the same to cause Sims emotional distress.

Sims fails to plead sufficient facts to reasonably demonstrate that Mistry's isolated conduct was a cause of her injury. The Second Amended Complaint contains no allegation that Mistry made any racial remark about Sims, stalked Sims, made any obscene gesture toward Sims, physically threatened Sims, recorded Sims, or took a photograph of Sims. The only arguable indirect contact Mistry had with Sims was by knocking on her door. This contact is insufficient to reasonably or plausibly infer that Mistry caused the alleged severe emotional distress or was a substantial factor in producing the alleged severe emotional distress.

For the same reasons, the allegations as to Mistry do not plausibly allege that his conduct was extreme and outrageous. Knocking on a person's door and making monkey noises in one's

own room cannot support a finding that such conduct was "a complete denial of the individual's dignity as a person." *Alsteen*, 21 Wis. 2d at 358-60; WIS JI-CIVIL 2725.

**III.     THE NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS CLAIM.**

Sims' third cause of action against Bekteshi and Mistry is for negligent infliction of emotional distress. Again, Sims broadly alleges that Bekteshi and Mistry participated in a "campaign" of bullying, racial and sexual harassment and discrimination, retaliation and physical and mental abuse against her and that, as a result, she suffered from severe emotional distress. (Dk. 35, ¶¶ 142-146).

A plaintiff alleging negligent infliction of emotional distress must prove the following elements: (1) that the defendant's conduct fell below the applicable standard of care, (2) that the plaintiff suffered an injury (severe emotional distress), and (3) that the defendant's conduct was a cause-in-fact of the plaintiff's injury. *Bowen v. Lumbermens Mut. Cas. Co.*, 183 Wis. 2d 627, 632, 517 N.W.2d 432 (1994); *see also* WIS JI-CIVIL 1511. "The plaintiff must demonstrate that [s]he was unable to function in [her] relationships because of the emotional distress caused by defendant's conduct. Temporary discomfort cannot be a basis of recovery." *Alsteen v. Gehl*, 21 Wis. 2d 349, 360-61, 124 N.W.2d 312 (1963). "The tort of negligent infliction of emotional distress is not designed to compensate all emotional traumas of everyday life." *Id.* at 659.

**A.     BEKTESHI**

In support of her negligent infliction of emotional distress claim, Sims specifically alleges that the undifferentiated "defendants" directly made racial remarks toward her, caused or allowed to be caused continued harassment of her throughout Marquette's campus, took a photograph of her, disseminated a photograph of her, and violated Marquette's policies. (Dk. 35, ¶ 143).

11

Completing lacking from the Second Amended Complaint is any allegation that Bekteshi made any comments to Sims, harassed Sims on campus, or took a photograph of Sims.

Moreover, while Sims alleges that the defendants allowed the bullying, harassment, discrimination, retaliation and abuse to occur, there is no factual allegation that Bekteshi knew that any of the alleged acts took place to reasonably infer that Bekteshi allowed such conduct to occur and/or continue. Given the complete lack of factual allegations against Bekteshi in this regard, Sims cannot establish that Bekteshi's conduct fell below the applicable standard of care[2] or that Bekteshi's conduct was the cause-in-fact of her emotional distress as required to state a claim for negligent infliction of emotional distress.

Sims alleges that Bekteshi circulated the photograph of her taken in an elevator. (Dk. 35, ¶ 31). However, in support of her claim for negligent infliction of emotional distress, Sims alleges that her emotional distress was caused by the dissemination of a semi-nude photograph taken while she was in a bathroom. (Dk. 35, ¶¶ 20 and 143). Therefore, based upon the very allegations in the Second Amended Complaint, Bekteshi's alleged dissemination of the photograph of Sims in the elevator was not a cause-in-fact of Sims' emotional distress. As such, Sims fails to plead sufficient facts to plausibly establish a negligent infliction of emotional distress claim against Bekteshi.

## B. MISTRY

As with Bekteshi, the same arguments apply. The specific allegations as to Mistry do not plausibly state a claim for negligent infliction of emotional distress. There is no allegation of any agreement or conspiracy among Mistry and any other defendant, and none can be plausibly inferred from the disparate conduct by the defendants. As to Mistry specifically, his conduct of making monkey noises in his own dorm room and knocking on plaintiff's door allegedly took

---

[2] Bekteshi incorporates the arguments set forth in Section I.A relative to standard of care.

place on one day, October 15, 2021. (Dkt. 35, ¶ 27). This isolated conduct cannot plausibly be found to have been a cause of severe emotional distress.

IV. THE ASSAULT CLAIM.

Sims' fourth cause of action against Bekteshi and Mistry is for assault. Sims broadly alleges that the acts of bullying, racial and sexual harassment and discrimination, retaliation and physical and mental abuse by the individual defendants created a reasonable apprehension of imminent bodily harm and that she believed the defendants had the ability to harm her. (Dk. 35, ¶¶ 148-151). As a result, she suffered severe emotional distress. (Dk. 35, ¶ 152).

An assault is an intentional attempt, by force or violence, to physically harm another. *Degenhardt v. Heller*, 93 Wis. 662, 664, 68 N.W. 411, 412 (1896). To prove an assault, a plaintiff must establish that a defendant had intent to cause physical harm to the plaintiff and the defendant acted to cause the plaintiff to reasonably believe the defendant had the present intent and ability to harm the plaintiff. *Id.*; WIS JI-CIVIL 2004. Evidence of threats, or of an intent to frighten, do not establish the element of intent to harm for the purpose of proving assault. *Id.*

A. BEKTESHI

The Second Amended Complaint is completely devoid of any allegation whatsoever that Bekteshi intentionally attempted to physically harm Sims with force or violence as required to state a claim for assault. Even if it is assumed that Sims interpreted Bekteshi's sitting near her in the dining hall as a threat, Sims' claim for assault fails as evidence of threats do not establish intent to harm for purposes of proving assault. *See Degenhardt*, 93 Wis. 2d at 664. Furthermore, there is no allegation that Sims was near Bekteshi when Bekteshi allegedly jammed the paper towel dispenser or disseminated the photograph of Sims from the elevator. Therefore, it would be impossible for Bekteshi to have committed an assault in those circumstances. Sims' merely recites

the elements of an assault claim in the Second Amended Complaint without alleging sufficient factual allegations to support the same. This is insufficient to state a claim upon which relief may be granted. *See Ashcroft*, 556 U.S. at 678. As such, Sims fails to plead sufficient facts to plausibly establish an assault claim against Bekteshi.

### B. MISTRY

The Second Amended Complaint is likewise completely devoid of any allegation that Mistry intentionally attempted to physically harm Sims with force or violence as required to state a claim for assault. None of Mistry's alleged conduct – making animal noises, knocking on a door, or sharing a Snapchat photo – could be construed as an intentional attempt, by force or violence, to physically harm Sims. *Degenhardt*, 93 Wis. at 664, 68 N.W. at 412.

## V. THE STALKING CLAIM.

Sims' fifth cause of action against Bekteshi and Mistry is a civil claim for stalking, in violation of Wis. Stat. § 940.32(2). Sims broadly alleges that the individual defendants engaged in an intentional course of conduct directed at her that caused her serious emotional distress. (Dk. 35, ¶¶ 155-157).

Wisconsin does not have a civil cause of action for stalking[3]. Rather, Wis. Stat. § 940.32 is a criminal statute. *See* Wis. Stat. § 939.01(chapters 939 to 951 may be referred to as the criminal code). The district attorney for the appropriate jurisdiction shall prosecute all criminal actions. *See* Wis. Stat. § 978.05(1). Sims' stalking claim must be dismissed as a matter of law since there is no civil cause of action for stalking.

---

[3] Wis. Stat. § 895.443 permits an individual to bring a civil action for violation of certain criminal statutes. However, Wis. Stat. § 895.443 does not allow for a civil action for a violation of Wis. Stat. § 940.32.

14

## VI. THE VOYEURISM/INVASION OF PRIVACY CLAIM UNDER WIS. STAT. § 995.50(2)(a).

Sims' sixth cause of action against Bekteshi and Mistry is for voyeurism and invasion of privacy under Wis. Stat. § 995.50(2)(a)[4]. Sims simply regurgitates the elements of an invasion of privacy cause of action and broadly alleges that the undifferentiated "defendants" engaged in an intentional course of conduct that intruded on her privacy in a highly offensive manner and in a place that a reasonable person would consider private and that such actions caused her severe emotional distress. (Dk. 35, ¶¶ 159-161).

Although Wisconsin law does not have a civil action for "voyeurism[5]," Wisconsin recognizes a right to privacy. There are four types of invasion of privacy which are actionable in a civil suit in Wisconsin. *See* Wis. Stat. § 995.50; *see also Zinda v. Louisiana Pacific Corp.*, 149 Wis. 2d 913, 440 N.W.2d 548 (1989). Wisconsin statute section 995.50 provides that one whose privacy is unreasonably invaded is entitled to relief. The law defines "invasion of privacy," in relevant part, as "intrusion upon the privacy of another of a nature highly offensive to a reasonable person, in a place that a reasonable person would consider private, or in a manner that is actionable for trespass." *See* Wis. Stat. § 995.50(2)(am)(1); *see also* WIS JI-CIVIL 2550.

In evaluating situations in which there could be a reasonable expectation of privacy, [a court] "considers the degree of intrusion, the context, conduct and circumstances surrounding the intrusion as well as the intruder's motives and objectives, the setting into which he intrudes, and the expectations of those whose privacy is invaded." *Bogie v. Rosenberg*, 705 F. 3d 603, 612 (7th Cir. 2013). A cause of action for invasion of privacy under Wis. Stat. § 995.50(2)(am)(1) does not

---

[4] Based upon the specific allegations set forth in support of this cause of action, Sims alleges a claim under Wis. Stat. § 995.50(2)(am)(1).
[5] "Voyeurism" is defined as "the practice of obtaining sexual gratification from observing others or the practice of taking pleasure in observing something private, sordid, or scandalous." *See Merriam-Webster Dictionary*.

15

require a showing of intent. *State ex rel. Kalal v. Circuit Court for Dane County*, 271 Wis. 2d 633, ¶ 45, 681 N.W.2d 110 (2004). The test is an objective one: whether a reasonable person would find the intrusion highly offensive. *Gillund v. Meridian Mut. Ins. Co.,* 323 Wis. 2d 1, ¶ 29, 778 N.W.2d 662 (Ct. App. 2009).

### A. BEKTESHI

Sims fails to state a claim for invasion of privacy against Bekteshi upon which relief may be granted. As it relates to the allegation that Bekteshi jammed the paper towel dispenser, there is no allegation that Sims was present when this was done. Furthermore, a reasonable person would not consider the sole act of jamming of a paper towel dispenser in a public bathroom with nothing more to be offensive, especially when no one was present. As it relates to the allegation that Bekteshi sat near Sims in the dining hall, no reasonable person would consider the dining hall on a college campus to be a private place. There is no allegation that Bekteshi did anything but merely sit at a table close to Sims in the dining hall.

As it relates to the dissemination of the photograph of Sims taken in an elevator, there is no allegation that Bekteshi took the photograph. Furthermore, no reasonable person in Sims position would consider an elevator on a college campus private. One cannot reasonably have an expectation of privacy while in a public elevator. While a reasonable person may find that the taking and/or dissemination of the photograph of Sims in the bathroom to be offensive, such an argument cannot be made for the photograph of Sims in the elevator. As such, Sims fails to plead sufficient facts to plausibly establish an invasion of privacy claim against Bekteshi.

### B. MISTRY

Sims fails to state a claim for invasion of privacy against Mistry upon which relief may be granted. As it relates to the allegation that Mistry knocked on Sims' door and ran away, there is

no plausible allegation that such conduct was a trespass or highly offensive to a reasonable person. It was a foolish prank, perhaps, but in the context of a freshman dorm it cannot be viewed as objectively highly offensive. As it relates to the allegation that Mistry and another person made monkey noises, it is expressly alleged they did so in their own dorm room. Such conduct cannot be deemed an invasion of privacy or otherwise akin to a trespass. And as with Bekteshi, there is no allegation that Mistry took the elevator photograph that was allegedly shared on Snapchat.

## VII. THE INTRUSION OF SECLUSION/INVASION OF PRIVACY CLAIM UNDER WIS. STAT. § 995.50(2).

Sims' seventh cause of action against Bekteshi and Misty is for intrusion of seclusion and invasion of privacy under Wis. Stat. § 995.50(2)(a)[6]. Identical to the claim for voyeurism, Sims simply regurgitates the elements of an invasion of privacy cause of action and broadly alleges that the undifferentiated "defendants" engaged in an intentional course of conduct that intruded on her solitude, seclusion, and private affairs in a highly offensive manner and in a place that a reasonable person would consider private and that such actions caused her severe emotional distress. (Dk. 35, ¶¶ 163-165). The same law set forth in Section VI applies to this cause of action.

### A. BEKTESHI

The same arguments set forth in Section VI.A apply to this case. As such, Sims fails to plead sufficient facts to plausibly establish an invasion of privacy claim against Bekteshi.

### B. MISTRY

The same arguments set forth in Section VI.B apply to this case. As such, Sims fails to plead sufficient facts to plausibly establish an invasion of privacy claim against Mistry.

---

[6] Based upon the specific allegations set forth in support of this cause of action, Sims alleges a claim under Wis. Stat. § 995.50(2)(am)(1).

## VIII. THE NON-PLEADED INTRUSION OF SECLUSION/INVASION OF PRIVACY CLAIM UNDER WIS. STAT. § 995.50(2)(am)3.

As set forth in the Joint Submission of Jury Instructions for Defendants Devin Mistry's and Serena Bekteshi's Motion to Dismiss, Sims proposes a jury instruction relative to an invasion of privacy claim under Wis. Stat. § 995.50(2)(am)3, which applies to "publicity given to a matter concerning the private life or another, of a kind highly offensive to a reasonable person, if the defendant has acted either unreasonably or recklessly as to whether there was a legitimate public interest in the matter involved, or with actual knowledge that none existed." Bekteshi and Mistry dispute the use and applicability of the proposed instruction, as Sims did not allege this particular claim in her Second Amended Complaint. Based upon the fact that Sims failed to allege such a claim in the Second Amended Complaint, Bekteshi and Mistry argue the Court should not consider such a claim. However, in the event the court relies upon such instruction, Bekteshi and Mistry offer the following argument as to why Sims has failed to plausibly establish a claim against them under Wis. Stat. § 995.50(2)(am)3.

To establish a cause of action under Wis. Stat. § 995.50(2)(am)3, a plaintiff must prove: (1) a public disclosure of facts regarding the plaintiff; (2) the facts disclosed are private facts; (3) the private matter made public is one which would be highly offensive to a reasonable person of ordinary sensibilities; and (4) the defendant acted either unreasonably or recklessly as to whether there was a legitimate public interest in the matter, or with actual knowledge that none existed. *See Reetz v. Advocate Aurora Health, Inc.*, 2022 WI App 59, ¶ 18, 405 Wis. 2d 298, 318, 983 N.W.2d 669, 679-80. A publicity of private facts cause of action requires intentional conduct. *Id.* at 320, ¶ 19. In *Reetz*, the court of appeals affirmed the dismissal of a publicity of private facts cause of action for failure to state a claim since the plaintiff failed to allege that Aurora intended to disclose or publicize private facts. *Id.* at 323, ¶ 22.

### A.    BEKTESHI

Sims fails to state a claim for invasion of privacy against Bekteshi under Wis. Stat. § 995.50(2)(am)3 upon which relief may be granted. The allegation that Bekteshi jammed the paper towel dispenser is insufficient to plausibly state such a claim since such an act does not involve any dissemination of information. The same is true for the allegation that Bekteshi sat near Sims in the dining hall. There is no allegation that Bekteshi said anything to anyone about Sims or provided any information about Sims to anyone. Therefore, there could be no public disclosure of any private fact.

Furthermore, the allegation that Bekteshi disseminated a photograph of Sims taken by another individual in an elevator on Snapchat is insufficient to plausibly state a claim upon which relief may be granted. To state a claim under Wis. Stat. § 995.50(2)(am)3, there must be a disclosure of a fact. There is no allegation that the photograph allegedly disseminated by Bekteshi contained anything but a picture of Sims. Additionally, no reasonable person in Sims' position would consider the dissemination of a photograph taken in a public place on an elevator to be highly offensive. As such, Sims fails to plead sufficient facts to plausibly establish an invasion of privacy claim against Bekteshi under Wis. Stat. § 995.50(2)(am)3.

### B.    MISTRY

Sims alleges no conduct by Mistry that could support a claim for invasion of privacy based upon a public disclosure of private facts. Nothing Mistry is alleged to have done could be construed as disclosing private facts about Sims.

## CONCLUSION

Sims has failed to set forth sufficient facts, accepted as true, to plausibly state claims upon which relief may be granted against Bekteshi and Mistry. To state claims upon which relief may

19

Case 2:23-cv-01154-JPS    Filed 02/01/24    Page 19 of 20    Document 42

be granted, the law requires that Sims allege sufficient facts that allows this court to draw a reasonable inference that Bekteshi and Mistry are liable for the alleged claims. Sims has failed to do so. Sims merely alleges threadbare recitals of the causes of action and conclusory statements without alleging specific factual content to support the same. As such, Bekteshi and Mistry respectfully request that this court grant their Motion to Dismiss under Rule 12(b)(6).

Dated this 1st day of February, 2024

| Respectfully submitted, | Respectfully submitted, |
|---|---|
| /s/ *Amy M. Freiman* | /s/ *Matthew W. O'Neill* |
| *Attorney for Defendant Serena Bekteshi* | *Attorney for Defendant Devin Mistry* |
| Amy M. Freiman | Matthew W. O'Neill |
| Hills Legal Group, Ltd. | Fox, O'Neill & Shannon, S.C. |
| N19W24075 Riverwood Drive, Suite 333 | 622 N. Water Street, Suite 500 |
| Waukesha, Wisconsin 53188 | Milwaukee, Wisconsin 53202 |
| (262) 347-0168 | (414) 273-3939 |
| afreiman@hillslegal.com | mwoneill@foslaw.com |