UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

AKIRA SIMS,

Plaintiff,

v.

MARQUETTE UNIVERSITY, et. al,

Defendant.

Case No. 2:23-1154
Judge Stadtmueller

**MEMORANDUM IN SUPPORT OF DEFENDANT CHARLIE MADIGAN'S MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(b)(6)**

Defendant Charlie Madigan, by and through his attorneys, Kasieta Legal Group, LLC, has moved to dismiss the Complaint for failure to state a claim, and in support offers the following arguments and authorities.

## INTRODUCTION

Plaintiff Akira Sims alleges that in Autumn 2021, while she was attending Marquette University and living in the dorms, she was harassed, bullied, and discriminated against by other students. She alleges that she reported these incidents to the University, but that the University purportedly did not adequately investigate.

She alleges that Charlie Madigan is one of the students who harassed her. However, when all of the conclusory and implausible allegations in the Second Amended Complaint ("SAC") are extracted, as they must be, the only remaining facts regarding Charlie Madigan are that Ms. Sims reported him to school officials for taking her photograph on a public elevator, and that Madigan (and all of the other defendants) "circulated" this photograph on social media. SAC ¶ 31. This does not support a cause of action. Accordingly, this Honorable Court must dismiss all claims

asserted against Mr. Madigan. Because this is the Second Amended Complaint and these deficiencies were previously brought to Plaintiff's attention (Dkt. 40) all claims against Mr. Madigan should be dismissed with prejudice.

**I. Standard of Review**

To survive dismissal per FRCP 12(b)(6), a Complaint must "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*.

Courts conduct two-part analysis in examining sufficiency of factual allegations. First, the Court must excise from consideration all "legal conclusions and conclusory allegations merely reciting the elements of the claim." *McCauley v. City of Chicago*, 671 F.3d 611, 616 (7th Cir. 2011). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. 678. "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions," and "a plaintiff's obligations to provide the 'grounds' of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555.

Second, the Court must "determine whether the remaining factual allegations 'plausibly suggest an entitlement to relief.'" *Id.* In this second step the Court should test the sufficiency of the facts pled to determine whether they provide the necessary "factual enhancement" to push the claim across the line from mere possibility of entitlement to relief into plausibility of

entitlement to relief. *Twombly*. 550 U.S. at 556; *Iqbal*, 556 U.S. at 678–79. That is, a complaint must include sufficient "factual enhancement" (*Twombly*, 550 U.S. at 557) to "nudge the claims across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570. A Court "must" dismiss any complaint that fails to do so. *Id.* "Determining whether a complaint states a plausible claim for relief" is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

"If the allegations give rise to an obvious alternative explanation, then the complaint may stop short of the line between possibility and plausibility of entitlement to relief." *McCauley*, 671 F.3d at 616 (cleaned up). It is not enough for a plaintiff to plead facts that are "merely consistent with" liability. In such a case, "the complaint has alleged—but it has not shown—that the pleader is entitled to relief" and such a pleading is defective. *Iqbal*, 556 U.S. at 678 (internal quotations omitted).

**a. The Complaint in Twombly was Defective Because the Facts Stripped of Labels and Conclusions Did Not Plausibly Allege Unlawful Conduct.**

The *Twombly* Plaintiffs alleged a conspiracy in two ways by regional telephone and internet carriers. First, they alleged that regional carriers "engaged in parallel conduct" in "their respective service areas to inhibit the growth" of competitors. The complaint alleged that this was accomplished by the defendants "making unfair agreements with [the competitors] for access to [defendants'] networks, providing inferior connections to the networks, overcharging, and billing in ways designed to sabotage the [competitors'] relations with their own customers." 550 U.S. at 550. The complaint alleged conspiracy by common motivation. *Id.* at 551.

Second, the *Twombly* plaintiffs alleged that regional carriers entered agreements to refrain from competing against each other. These alleged agreements were to be "inferred" from the

conduct of the parties. *Id*. at 551. The inference regarding agreements among regional carriers relied on a statement of the CEO of one defendant regarding the propriety of competition. *Id*.

The pleading in *Twombly* summed up the allegations as follows:

> In the absence of any meaningful competition between the [Defendants] in one another's markets, and in light of the parallel course of conduct that each engaged in to prevent competition from [Competitors] within their respective local telephone and/or high speed internet services markets and the other facts and market circumstances alleged above, Plaintiffs allege upon information and belief that [Defendants] have entered into a contract, combination or conspiracy to prevent competitive entry in their respective local telephone and/or high speed internet services markets and have agreed not to compete with one another and otherwise allocated customers and markets to one another."

*Id*. The United States Supreme Court, reversing the Second Circuit, dismissed the action for failure to adequately allege an agreement or conspiracy to violate antitrust laws. *Id*. at 553. The Court so held even though the complaint contained "a few stray statements" which "speak directly of agreement" because "on a fair reading these are merely legal conclusions resting on the prior allegations." *Id*. at 564. Accordingly, the Court concluded, these allegations of agreement were not entitled to the assumption of truth. *Id*. at 555. The Court expressed concern that if the parallel conduct alleged could support an antitrust conspiracy, then pleading such a case "against almost any group of competing businesses would be a sure thing." *Id*. 566.

**b. The Iqbal Complaint Failed Because it Did Not Allege Facts Constituting Unlawful Conduct.**

In *Iqbal*, the Plaintiff alleged that former Attorney General John Ashcroft and Director of the Federal Bureau of Investigation Robert Mueller had designated him as "a person of high interest on account of his race, religion, or national origin, in contravention of the First and Fifth Amendments." 556 U.S. at 662 (internal quotations omitted). The Plaintiff was arrested on criminal charges related to identification documents. He was designated as a person of "high

interest" during pretrial incarceration. *Id*. at 667. After that designation, his housing conditions changed to "maximum security conditions allowable under Federal Bureau of Prisons regulations." *Id*. at 668. The Plaintiff pleaded guilty to his criminal charges and was removed to his native country. He then filed a civil suit against 34 current and former federal officials and 19 "John Doe" federal corrections officers alleging constitutional violations. *Id*.

Plaintiff named as Defendants correctional officers with whom he had daily contact, wardens of the facility where he was housed, and Defendants Ashcroft and Mueller, top law enforcement officials. *Id*. The complaint described physical and psychological abuse by jailors, but these claims were not at issue in the claims against Ashcroft and Mueller. *Id*.

The facts in the complaint regarding Mueller and Ashcroft were as follows. "The FBI, under the direction of Defendant Mueller, arrested and detained thousands of Arab Muslim men . . . as part of its investigation of the events of September 11." *Id*. at 669 (internal quotations omitted). "The policy of holding post-September-11th detainees in highly restrictive conditions of confinement until they were 'cleared' by the FBI was approved by Defendants Ashcroft and Mueller in discussions in the weeks after September 11, 2001." *Id*. And, Plaintiff posited that Ashcroft and Mueller "each knew of, condoned, and willfully and maliciously agreed to subject" the Plaintiff to harsh jail conditions "as a matter of policy, solely on account of [his] religion, race, and/or national origin and for no legitimate penological interest." *Id*. Ashcroft is labeled in the complaint as the "principal architect" of this policy, and Mueller is said to be "instrumental in [its] adoption, promulgation, and implementation." *Id*.

The United States Supreme Court determined that the allegations that Mueller and Ashcroft agreed to subject Plaintiff to harsh conditions "solely on account" of his religion, race, or national

origin, and the allegations labeling Ashcroft as "principal architect" and Mueller as "instrumental," were not entitled to a presumption of truth due to their "conclusory nature." *Id*. at 680-81.

The remaining allegations were: (1) Mueller and Ashcroft approved a policy implemented by the FBI to subject September-11th detainees to "highly restrictive conditions of confinement" until they were cleared by the FBI, and (2) the FBI arrested and detained thousands of Arab Muslim men "under the direction of Defendant Mueller," after September 11th. *Id*. at 681. These allegations, the Court explained, were "consistent with" a valid claim of discrimination, but "given more likely explanations, they did not plausibly establish this purpose." *Id*. at 681. Accordingly, the Court held that the complaint failed to state a claim for relief against Mueller and Ashcroft. *Id*. at 683.

## II. The Conclusions, Labels, and Implausible Allegations in Paragraphs 103 and 15 of the SAC Cannot Be Accepted as True.

Ms. Sims labels Charlie Madigan and each of the other individual defendants as "ring leaders" in a campaign to "discriminate against," and "harass" her while she was attending Marquette University. Second Amended Complaint, ("SAC") ¶ 103. Explaining what this "campaign" of discrimination and harassment entailed, Ms. Sims alleges, once again in conclusory fashion, that each of the individual defendants "engaged in a pattern of extreme and outrageous conduct," of "weekly, sometimes daily" "racist remarks," making "disparaging monkey noises," "stalking the Plaintiff by following her throughout campus," "making obscene gestures," "physically threatening the Plaintiff's safety," "secretly recording the plaintiff," and taking inappropriate, humiliating, and unauthorized photographs of the Plaintiff. SAC ¶ 15.

The allegations in paragraph 103 cannot be taken as true because they are conclusory. Like the *Iqbal* Court, where the Court rejected labels that Plaintiff attempted to apply to Ashcroft (principal architect) and Mueller (instrumental), here the Court must reject the label applied to Mr.

Madigan (ringleader). 556 U.S. at 669. This entire paragraph is conclusory, and accordingly, cannot defeat a motion to dismiss, where "labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. Moreover, it is not plausible to label Mr. Madigan a ringleader where the only specific allegation against him is that he was reported on for taking a photograph of the plaintiff in a public elevator (see Section III. below). A "ringleader" of a campaign to harass must do more than this.

The allegations in paragraph 15 are also defective. This paragraph concludes that there has been a pattern of extreme and outrageous conduct perpetrated by all defendants. It fails to allege where, when, or how this conduct occurred, or which defendant engaged in the alleged conduct. Instead, it lumps all defendants and their supposed conduct together. As was the case in *Twombly*, "on a fair reading these are merely legal conclusions resting on the prior allegations." 550 U.S. at 564. The remaining allegations in the complaint demonstrate that not every defendant did each of the acts listed in paragraph 15. Accordingly, as the *Twombly* Court concluded, these allegations of agreement are not entitled to the assumption of truth. See *Id*. at 555.

Plaintiff does not allege that each action itemized in paragraph 15 was actually perpetrated by each defendant. Unknown persons (SAC ¶ 22), and defendant Mistry allegedly made monkey sounds at Plaintiff (SAC ¶ 27). Defendant Mistry allegedly knocked on Sims' door and ran away. SAC ¶ 29. Defendant Bekteshi allegedly purposefully jammed the paper towel dispenser. SAC ¶ 30. There are also allegations of conduct by unknown persons, not Madigan, which cannot be presumed to be committed by him. Most notably, Ms. Sims admits that she does not know who purportedly took a semi-nude photograph of her in the bathroom. SAC ¶ 20. She alleges only that the unknown person who took this photograph, "disseminated" it on social media to "multiple other students." *Id*. It is not alleged that Mr. Madigan even received this photograph from the

unknown assailant. Charlie Madigan cannot be blamed for actions the Plaintiff alleges were committed by others or unknown persons. See also SAC ¶¶ 17-18 (noise complaints), ¶ 21 (comments), ¶ 33 (harassment in class), ¶ 46 (cafeteria seating), ¶ 54 (comments).

These additional facts and allegations from the Second Amended Complaint render paragraph 15 implausible. If all the Defendants participated in all of the activities stated in paragraph 15, all of the time ("weekly, sometimes daily"), then Plaintiffs' various reports to school officials would have been more frequent and would have involved actual outrageous conduct by all of the defendants. If paragraph 15 is taken as true, this Honorable Court must presume that Mr. Madigan's conduct involved a "weekly" and "sometimes daily" campaign of "outrageous conduct," despite a complete lack of specific allegations of any such conduct. Mr. Madigan's role in this so-called harassment campaign is confined to paragraph 31 of the Second Amended Complaint, addressed below.

## III. The Only Remaining Allegations Against Madigan are Plaintiff Reported Madigan for Taking Her Photograph in an Elevator, and all Defendants "Circulated" this Photograph.

Once conclusory and implausible paragraphs are properly set aside, the only complaint allegations regarding Mr. Madigan's conduct are that on October 16, 2021, Ms. Sims emailed her resident advisor to report that Madigan took "a nonconsensual photograph of her in the elevator." SAC ¶ 31. Plaintiff alleges further that each individual defendant "circulated" this photograph of her "online through Snapchat." *Id*.

Thus, Madigan individually is only charged with **having a report made against him.** Even taking as true the allegation that Madigan (and all other defendants) circulated a photograph of Plaintiff on a public elevator, that cannot state a cause of action. Because these facts do not support a cause of action, Defendant Madigan has moved to dismiss each charge against him in

the Second Amended Complaint: Count II (Negligence), Count IV (Intentional Infliction of Emotional Distress), Count VI (Negligent Infliction of Emotional Distress), Count VII (Assault), Count VIII (Stalking), Count IX (Voyeurism), and Count X (Intrusion Upon Seclusion).

## IV. Photographing a Person in Public and Circulating it On Social Media Does Not State a Cause of Action.

### a. Plaintiff Fails to State Claims of Negligence or Negligent Infliction of Emotional Distress.

A plaintiff in a negligence action must prove (1) that the defendant owed a **duty** of reasonable care to the plaintiff, (2) that the defendant **breached** this duty of reasonable care, (3) that this breach of the duty of reasonable care was a **cause**, meaning a substantial factor in bringing about an injury to the plaintiff, (4) the extent of any such injury (**damage**) proximately caused by the breach, and (5) that public policy considerations do not prohibit the imposition of liability against the defendant. *Skindzelewski v. Smith*, 2020 WI 57, ¶ 8, 392 Wis. 2d 117.

It is not actionable conduct to photograph a person in public and share that photograph with other people. There is no duty of reasonable care to refrain from such conduct, nor would it be logical to impose such a duty on public policy grounds. Otherwise, every stray photograph taken in public could support a negligence claim. There would be no logical endpoint to the imposition of such a duty. And it is unforeseeable that taking a photograph would injure the subject of the photo.

Any claim for negligent infliction of emotional distress must state a claim for negligence and the injury of "severe emotional distress." *Bowen v. Lumbermens Mut. Casualty Co.*, 183 Wis.2d 627, 652, 517 N.W.2d 432 (1994) (explaining that the framework for a claim of negligent infliction of emotional distress follows the traditional rules applicable to negligence claims, i.e.,

"negligent conduct, causation and injury (here severe emotional distress)."). The second amended complaint here fails to satisfy that obligation.

**b. Plaintiff Fails to State a Claim of Intentional Infliction of Emotional Distress.**

A claim of intentional infliction of emotional distress requires proof that: "(1) defendant intended to cause emotional distress by his conduct; (2) the conduct was extreme and outrageous; (3) the conduct was a cause-in-fact of plaintiff's emotional distress; and (4) plaintiff suffered an extreme and disabling response to defendant's conduct." *Terry v. J. Broad. Corp*., 2013 WI App 130, ¶ 42, 351 Wis. 2d 479, 515, 840 N.W.2d 255.

The plaintiff has not alleged adequate facts to prove any of these elements. No fact alleged suggests or implies that Madigan intended to cause Plaintiff emotional distress by taking her photograph in the elevator. In fact, there is no allegation that the photograph was taken intentionally or with the conscious purpose of harming Plaintiff. There is also no allegation that this was extreme or outrageous conduct. Neither is there any allegation that Plaintiff suffered any injury from the elevator photograph, much less a extreme or disabling response to it. Notably, unlike the photograph allegedly taken of Plaintiff while she was in the restroom (which photo Plaintiff does not allege Madigan took), the complaint is silent on the content of the elevator photograph. It is implausible to presume that a photograph supposedly taken in a public elevator depicted anything other than the Plaintiff standing in an elevator.

**c. Plaintiff Fails to State a Claim of Assault.**

To prove assault, Plaintiff must show (1) that the Defendant intended to cause physical harm to Plaintiff; and (2) that the Defendant acted to cause the Plaintiff to reasonably believe the Defendant had the present intent and ability to harm Plaintiff. *Degenhardt v. Heller*, 93 Wis. 662, 68 N.W. 411 (1896). There is no suggestion in the Second Amended Complaint that by taking an

unauthorized photograph of Plaintiff in an elevator, or by circulating the photograph on social media, Madigan intended to or did cause physical harm to the Plaintiff.

**d. Plaintiff Fails to State a Claim of Stalking.**

Wisconsin Statute §940.32, "stalking" cited by the Plaintiff in Count VIII, is part of the Wisconsin criminal code. There is no private right of action under this statute, and so there are no pattern Wisconsin Civil Jury Instructions for "stalking," and no reported cases involving a lawsuit for "stalking." Accordingly, this claim must be dismissed. It fails to state a claim upon which relief can be granted.

"A statute creates a private right of action" if "there is a clear indication of the legislature's intent to create such a right." *Grube v. John L. Daun*, 210 Wis. 2d 681, 689 (1997). As a "general rule" any "statute which does not purport to establish a civil liability, but merely makes provision to secure the safety or welfare of the public as an entity, is not subject to a construction establishing a civil liability." *Id*. "Accordingly, a private right of action is only created when (1) the language or the form of the statute evinces the legislature's intent to create a private right of action, and (2) the statute establishes private civil liability rather than merely providing for protection of the public." *Id*. Section 940.32 suggests no legislative intent to create a private right of action. To the contrary, the statute defines three levels of felony stalking, and even states that a "prosecutor" need not show that a victim received or will receive mental health treatment. Wis. Stat. §940.32(3m). There is, quite simply, no support for the existence this claim in Wisconsin law.

**e. Plaintiff Fails to State Claims per Wis. Stat. § 995.50(2)(am)1 ("Intrusion Upon Seclusion" and "Voyeurism").**

Plaintiff asserts two claims springing from the same statutory section: "Intrusion Upon Seclusion" and "Voyeurism." SAC ¶¶ 158-165. They must both be dismissed for the same reasons. A statutory claim in Wis. Stat. §995.50(2)(am)1 for invasion of privacy requires a showing that

the Defendant (1) intruded upon the privacy of the Plaintiff; (2) that this intrusion was of a nature highly offensive to a reasonable person; (3) that this intrusion occurred in a place that a reasonable person would consider private, or that the intrusion occurred in a manner that is actionable for trespass.

There is no intrusion of privacy taking a photograph in a public elevator. Even if there were, such a photograph is not "of a nature highly offensive to a reasonable person." No reasonable person would consider a dormitory elevator private.

In *Poston v. Burns*, the Court of Appeals held that recording sounds emanating from a neighbor's home using a common recording device, placed inside the window of the person accused of the intrusion, was not an intrusion of a nature highly offensive to a reasonable person in violation of sub. (2) (a) [this is now sub. (2) (am) 1.]. 2010 WI App 73, 325 Wis. 2d 404, 784 N.W.2d 717. As in *Potson*, here Mr. Madigan's "recording device" or camera was within a common space of his own shared residence—a dorm elevator. Also, there could be no trespass satisfying element (3), because Madigan lived in the same dorm as Ms. Sims, where the purported intrusion allegedly occurred. Madigan had a right to be in the elevator with her. The statutory privacy claims against Mr. Madigan must be dismissed.

## CONCLUSION

Plaintiff's Second Amended Complaint is littered with conclusory and implausible allegations. *Twombly* and *Iqbal* exclude these allegations from consideration on a motion to dismiss. The only well-pled factual allegations against Charlie Madigan are that Ms. Sims reported him to school officials for taking her photograph in a public dorm elevator, and that Madigan (and the other defendants) purportedly circulated this photograph to other students. These allegations do not support a cause of action. Accordingly, Plaintiff's Second Amended Complaint must be

dismissed for every claim asserted against Madigan: Count II (Negligence), Count IV (Intentional Infliction of Emotional Distress), Count VI (Negligent Infliction of Emotional Distress), Count VII (Assault), Count VIII (Stalking), Count IX (Voyeurism), and Count X (Intrusion Upon Seclusion).

This is the Second Amended Complaint. The pleading defects described herein were previously brought to Plaintiff's attention and have not been corrected. See Dkt. 40. Accordingly, Mr. Madigan respectfully seeks dismissal with prejudice.

Dated this 1st day of February 2024.

*Electronically signed by Robert J. Kasieta*
*Attorneys for Defendant Charlie Madigan*
Robert J. Kasieta
Noah B. Relles
Kasieta Legal Group
559 D'Onofrio Drive
Suite 222
Madison, Wisconsin 53719
(608) 662-9999
rjkasieta@kasieta.com
nr@kasieta.com